IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CECIL MOORE, | ) | |
| Plaintiff, | ) | Civil Case No. 7:20-cv-00166 |
| | ) | |
| v. | ) | |
| | ) | |
| CORRECTIONAL OFFICER | ) | By: Elizabeth K. Dillon |
| CHANDLER, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Cecil Moore is an inmate formerly in the custody of the Southwest Virginia Regional Jail Authority ("SWVRJ").[1] Proceeding pro se, Moore filed this lawsuit pursuant to 42 U.S.C. § 1983, naming as defendants SWVRJ Correctional Officers Chandler and Eldridge.[2] The court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2) and determined that Moore's initial complaint was subject to dismissal as pled. The court granted Moore an opportunity to amend his complaint. Moore filed both an amended complaint and a supplemental amended complaint, alleging that Chandler and Eldridge used excessive force in unnecessarily restraining Moore from a threatened suicide attempt.

Pending before the court is defendants' motion for summary judgment. Defendants argue that Moore failed to exhaust any relevant grievance before filing this lawsuit. Because Moore has failed to produce any significantly probative evidence demonstrating that he exhausted a relevant grievance, or that he was unable to do so through no fault of his own, the court will grant defendants' motion for summary judgment, and dismiss Moore's claims with prejudice.

---

[1] Moore is currently housed at the Federal Medical Center in Lexington, Kentucky.

[2] Chandler's first name is James, and Eldridge's first name is Donnie. Thus, the Clerk will be directed to update the docket to state the defendants' full names: James Chandler and Donnie Eldridge.

1

I. MOORE'S CLAIMS

Moore alleges that on November 29, 2018, he was "placed on suicide watch for no reason." He ripped off a piece of his blanket and showed correctional officers that he could use the strip of blanket to hang himself, if he was suicidal. Correctional officers, including Chandler and Eldridge, entered Moore's cell. According to Moore, the correctional officers placed Moore on his stomach on the floor and attempted to "fold [him] backwards like in a hog tying position." Moore nearly passed out for lack of air, his neck was bruised, and he was left in a great deal of pain. Moore alleges that this was all unnecessary because he was not actually suicidal. Moore alleges that defendants ignored Moore's physically impaired condition.

Defendants have submitted the declaration of Jeannie Patrick, Lieutenant at SWVRJ. Patrick declares that there is no record of any such event occurring on November 29, 2018, but that there is an incident report describing an incident that occurred on November 23, 2018, as follows:

> On 11-23-2018 at approx.. 1630 I, Officer Spurlock, made a round in 8A and inmate Cecil Moore Cell 23, who was on suicide watch at the time, stated he needed to call his wife. When I informed inmate Moore he was not able to make a call he began to get irate and stated if he wanted to kill himself he would use a long piece of material from a suicide mat that he had torn from the mat and he showed me the piece of material. I then called for Lt. Templeton to come to 8A to talk to inmate Moore. At this time Officers Eldridge, Blevins and Chandler arrived and Lt. Templeton followed. Inmate Moore was told to put down the piece of material several times by myself and Lt. Templeton but he refused. Inmate Moore then wrapped the piece of material around his hand as I opened the cell door and officers entered the cell and Moore walked toward [us] and tried to fight but he was restrained by officers and handcuffed. Inmate was then placed in the restraint chair. Nurses were called and Nurse Adams checked his restraints and everything was ok. EOR (end of report).

(Patrick Decl. ¶ 18 & Exhibit A-4, Dkt. No. 34-1, p. 4, ¶ 18 & p. 57.)

II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id*. at 24-48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 377 U.S. at 249-40).

III.  DISCUSSION

**A.  Exhaustion Under the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected

to suit, reduc[es] litigation to the extent complaints are satisfactorily resolved, and improv[es] litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). "[E]xhaustion is mandatory under the PLRA and … unexhausted claims cannot be brought in court." *Id*. at 211.

The PLRA requires "proper exhaustion" of available remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[P]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceeding." *Id*. at 90-91. Thus, an inmate's failure to follow the required procedures of the prison's administrative remedy process, including time deadlines, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id*. at 90. Notably, moreover, district courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 1174, ___, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable through no fault of the inmate. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable to

consistently unwilling to provide any relief to aggrieved inmates;" (2) it is so opaque that it becomes, practically speaking, incapable of use;" or (3) prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60; *see also Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process … the process that exists on paper becomes unavailable in reality.").

**B. Moore Did Not Timely Initiate Any Relevant Grievance, And A Tenuously-Related, Untimely Grievance Was Rejected For Vagueness**

According to Patrick's declaration, the SWVJA has an inmate handbook which sets forth the process by which an inmate can file for administrative remedies. Inmates may grieve "any behavior or action directed toward an inmate by a facility employee or other inmates[.]" (Patrick Decl. ¶ 8 & Exhibit A-2, p. 9, Dkt. No. 34-1, p. 18.) Before initiating a grievance, the inmate must make an effort to informally resolve the issue, using forms available on the kiosk. (*Id.* ¶¶ 10-11 & Exhibit A-2, p. 28, Dkt. No. 34-1, p. 37.) The "kiosk" is defined in the Inmate Handbook as:

> Computer generated information system for inmate's [sic] to notify institutional personnel with concerns or complaints. Please direct your complaint(s) to the appropriate department for which you want a response from.

(*Id.* ¶ 14, Exhibit A-2, p.10, Dkt. No. 34-1, p.19.)

After making an effort to informally resolve the issue, the inmate initiates the grievance procedure by filing a grievance within seven days of the occurrence. (*Id.* ¶¶ 12-13 & Exhibit A-2, p.28, Dkt. No. 34-1, p. 37.) If there is good reason for delay, the delay should not exceed fifteen days.[3] (*Id.* ¶ 12.) The grievance is submitted on the kiosk, or with a grievance form if the

---

[3] The fifteen-day extension for good cause that Patrick describes, is apparently an informal policy of the administrator, as it is not set forth in the inmate handbook.

kiosk is unavailable. (*Id.* ¶ 11.) The inmate receives a response within nine days, informing the inmate whether the grievance is valid. If the grievance is found to be valid, a written finding is returned with the response. Finally, an inmate who is dissatisfied with the response may appeal within seven days of receipt of the response. (*Id.* Exhibit A-2, p. 28, Dkt. No. 34-1, p. 37.) It is this final appeal that establishes administrative exhaustion. *See Woodford*, 548 U.S. at 90.

Patrick declares that Moore did not exhaust any grievance regarding the alleged excessive use of force by Chandler and Eldridge in late November 2018. (Patrick Decl. ¶ 16, Dkt. No. 34-1, p. 3.) According to Patrick's records of Moore's kiosk use, the kiosk entries are grouped according to topic area. (*Id.* ¶ 17 & Exhibit A-3, Dkt. No. 26-1, pp. 40-56.) Moore's kiosk activity related to grievances indicate that in September 2018 he complained that he had not been issued a cane. He apparently did not receive the cane and appealed in March 2019.[4] Also in September 2018, Moore submitted a medical grievance regarding his medications. In October 2018, Moore grieved that he had not received nail clippers.

There is no indication in these kiosk records that Moore initiated the process of grieving Chandler's and Eldridge's alleged excessive use of force in late November 2018 in any timely manner. Over nine months later, on July 27, 2019, Moore did submit a written grievance asking to talk to "the Major," and complaining that he had been assaulted three times with excessive force. (Patrick Decl. ¶ 19 & Exhibit A-4, Dkt. No. 34-1, pp. 58-60.) His grievance does not describe any of the three alleged assaults, but it continues in conclusory fashion to complain *inter alia* that his legal mail envelopes were taken, confidentiality was breached, he was deprived of basic needs, he was wrongfully strip searched, his due process rights were violated, and malpractice occurred. In the space provided for him to explain what action he would like to have

---

[4] The kiosk records attached to Patrick's declaration show entries for grievance activity through at least March 16, 2019. (Dkt. No. 26-1, pp. 40-41.)

happen, Moore suggested to "talk and see what we come up with." The grievance was rejected on August 2, 2019, on grounds that it did not properly describe Moore's grieveable issue(s) because a talk with the Major was a request rather than a grievance and because the Major was not involved in the grievance process.

In unsworn response to the summary judgment motion, Moore contends that he did exhaust all administrative remedies and grievances. He does not, however, submit any documentation of a relevant grievance, nor exhaustion of any such grievance. Moore states that he is impaired, and he asked various prison officials for help, including correctional officers, lieutenants, and sergeants, but he does not provide any specific details, nor evidence, of such requests.

Moore also contradicts his own claim of exhaustion with his assertion that he did not have access to the kiosk from October 11, 2018, until December 8, 2018, because he was in the medical unit and the special housing unit due to a broken hand and that correctional officers did not respond to his request for paper grievance forms.[5] Even if such lack of access is assumed, and even if it is assumed that the assault occurred on November 23 (rather than November 29), if Moore was truly unable to initiate a grievance before December 8, 2018, the extra fifteen days permitted for filing a delayed grievance (with good reason) would have given Moore an extended deadline until at least December 15 to initiate a grievance about an assault that allegedly occurred on November 23, 2018.[6] *See* Patrick Decl. ¶ 12, Dkt. No. 34-1, p. 3; *see also supra* fn.3. Indeed, Moore's kiosk records show that he accessed the kiosk on December 11, 2018, to

---

[5] Moore also inexplicably references an alleged assault by "McMurry" which is the subject of Moore's separate lawsuit. *See Moore v. McMurry*, 7:20-cv-164 (W.D. Va.).

[6] Since it appears the event in question occurred on November 29, rather than November 23, a fifteen-day extension for good reason meant that Moore would have had until December 21, 2018, to initiate a grievance.

7

close some outstanding requests. Even if Moore was not aware that he could initiate a tardy grievance, he apparently attempted to do exactly that, months later, with his rejected grievance of July 27, 2019.

On this record, Moore has failed to demonstrate a genuine issue as to whether he exhausted a relevant grievance. Moore made use of the kiosk for other grievance activity, both before and after the alleged assault of late November 2018, yet he did not attempt to even initiate a grievance on this topic until his belated effort of July 2019. Thus, Moore did not exhaust his available grievance remedies. Moore has not produced any significantly probative evidence that his failure to exhaust was the result of any action or inaction on the part of prison officials or that administrative remedies were unavailable to him through no fault of his own. *See Tuckel*, 660 F.3d at 1254.

Usually, the failure to exhaust under § 1997e(a) results in a dismissal without prejudice. *See, e.g.*, *Booth v. Churner*, 532 U.S. 731, 735 (2001). But when a plaintiff can no longer begin the exhaustion process because the time for filing a grievance has expired, dismissal with prejudice is appropriate. *See Harris v. Elam*, No. 7:17CV00147, 2020 WL 2079976, at *4 (W.D. Va. Apr. 30, 2020) (dismissing claims with prejudice upon a finding that the plaintiff could not begin the exhaustion process anew); *McCoy v. Williams*, No. 3:10CV349, 2011 WL 5153253, at *4 (E.D. Va. Oct. 28, 2011) (same). That is the case here, and this dismissal will be with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the court concludes that Chandler's and Eldridge's motion for

summary judgment will be granted and Moore's claims will be dismissed without prejudice for failure to exhaust his administrative remedies. An appropriate order will be entered.

Entered: September 21, 2021.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge